Argued and submitted October 6, 1999, affirmed November 1, 2000

## MUTUAL OF ENUMCLAW INSURANCE COMPANY,
*Respondent,*

*v.*

## Kimberly ROHDE and Todd Rohde,
*Appellants,*

*and*

## Paul H. LAPP and Natalie Lapp,
*Defendants.*

(CV980500; CA A105771)

13 P3d 1006

W. Eugene Hallman argued the cause and filed the briefs for appellants.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before Landau, Presiding Judge, and De Muniz and Linder, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff Mutual of Enumclaw (Enumclaw) initiated this declaratory judgment action to determine whether it has a duty to defend or indemnify defendants Todd and Kimberly Rohde (Rohdes) in a wrongful death action brought against them by Paul and Natalie Lapp (Lapps). The trial court entered summary judgment declaring that Enumclaw owes no duty to defend or indemnify. The Rohdes appeal, and we affirm.

The relevant facts are undisputed. The Rohdes live on a farm, which is owned by P.J. Rohde Ranch, Inc. A number of buildings are situated on the farm, including two detached houses, commonly referred to as the "yellow house" and the "green house." The Rohdes live in the yellow house. Todd's parents live in the green house. The two houses are located approximately 25 feet apart and are served by the same electrical meter. P.J. Rohde Ranch, Inc., pays the electric bill for both houses.

The Rohdes own an antique store in Pendleton, and their main occupation is operating that store. Todd also works for the farm and is paid a salary and is granted free rent. The Rohdes enjoy a close relationship with Todd's parents. The two families regularly eat together and have unfettered access to both houses. The Rohdes take care of the grounds surrounding both houses.

Todd's parents maintain a policy of homeowners' insurance with Enumclaw. The policy defines "insured" as follows:

"a.   'Insured' means 'you' and if 'you' are:

"(1)   an individual, 'Insured' also means the following members of 'your' household;

"(a)   'Your' spouse

"(b)   Any of 'your' relatives[.]"

The policy also includes an endorsement for additional insureds. The endorsement provides:

"ADDITIONAL INSURED—DESIGNATED
PREMISES ONLY

## "TODD A. ROHDE

"* * * * *

"Location of Premises:   ANY OWNED OR LEASED FARM
LOCATIONS

"It is agreed that:

"* * * * *

"B.  With respect to insurance afforded under Section II
[the liability coverage],

"1  the definition of 'insured' is amended to include
the person(s) or organization(s) named above,
but only with respect to the ownership, main-
tenance or use of the premises designated
above and operations necessary or incidental
thereto[.]"

Todd's sister is Natalie Lapp. The Lapps left their
four-year-old son, Cutter, in the care of the Rohdes, along
with several other children. Cutter drowned in the swimming
pool of an abandoned motel where the children had been
playing. The Lapps brought a wrongful death action against
the Rohdes. The Rohdes, in turn, tendered defense of the
action to Enumclaw, contending that they are members of
the "household" of the insureds, Todd's parents. The insurer
accepted the tender under a reservation of rights. It then ini-
tiated this action.

The parties both moved for summary judgment.
Enumclaw argued that the Rohdes are not members of the
household of the insureds and therefore are not "insureds"
within the meaning of the policy. The trial court agreed,
granted Enumclaw's motion, denied the Rohdes' motion, and
entered judgment accordingly.

On appeal, the Rohdes argue that the trial court
erred in granting Enumclaw's motion and in denying theirs.
According to the Rohdes, the meaning of the term "house-
hold" is a question of law, which is determined by the appli-
cation of a multi-factor analysis, taking into account not

merely whether individuals live under the same roof, but also the length of time they have resided together, whether their residence is intended to be permanent, and whether they are financially dependent upon one another. The Rohdes argue that, as a matter of law, they are members of Todd's parents' "household," because they have for a long time lived on the ranch as an extended family and intend to do so permanently.

Enumclaw argues that the Rohdes have missed the point, which is the meaning of the term "household" as it is used in its contract of insurance. According to Enumclaw, that is not determined by reference to a multi-factor analysis of facts extrinsic to the contract, but rather by reference to the terms in the contract itself and its relevant context, as provided in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). Applying that approach, Enumclaw argues, it is clear that "household" does not refer to the Rohdes. Among other things, the insurer argues, the fact that the policy contains an endorsement for additional insureds to cover Todd makes clear that the term "household" did not already include him; otherwise, the endorsement would be redundant. We agree with Enumclaw.

In reviewing a summary judgment, we examine the record in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). In this case, because the relevant facts are undisputed, we review the trial court's decision to determine whether Enumclaw was entitled to judgment as a matter of law.

In engaging in that review, we are required to ascertain the meaning of a term in a contract of insurance. The Supreme Court has held that to determine the meaning of a disputed term in an insurance policy, " 'the primary and governing rule * * * is to ascertain the intention of the parties.' " *Hoffman*, 313 Or at 469 (quoting *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)). The intention of the parties is determined by examination of the terms and conditions of the policy itself. *Hoffman*, 313 Or at 469. When

a term is undefined by the policy itself, we identify the ordinary meaning of the term and examine both the immediate context in which it is used and the broader context of the policy as a whole to determine whether there remains any ambiguity about what the parties intended. *Id.* at 469-70. If, after that examination, we conclude that ambiguity remains, we construe the policy against the drafter. *Id.* at 470-71.

■    In this case, the term "household" is not defined in the policy. The ordinary meaning of the term, as revealed by resort to *Webster's Third New Int'l Dictionary,* 1096 (unabridged ed 1993) is:

> "those who dwell under the same roof and compose a family: a domestic establishment; *specif*: a social unit comprised of those living together in the same dwelling place."

A "family" likewise is defined as

> "**a:** a group of individuals living under one roof: HOUSEHOLD * * * **b:** the body of persons who live in one house and under one head including parents, children, servants, and lodgers or borders; *specif*: a group of persons sharing a common dwelling and table[.]"

*Id.* at 821. From the dictionary alone, it is not entirely clear that "household" must refer only to persons living in a single building.

To be sure, in previous cases, the courts have given the term such a narrow meaning. For example, in *Garrow v. Pennsylvania Gen. Ins. Co.*, 288 Or 215, 603 P2d 1175 (1979), the court addressed whether an individual was a member of an insured's "household" within the meaning of a statute that required motor vehicle liability policies to include certain coverage for an insured and "members of his family residing in the same household." The court held that:

> "In order to be a member of the named insured's family and household for purposes of the statute, it is necessary that plaintiff live under the same roof as the named insured."

*Id.* at 220. Similarly, in *Allen v. Multnomah County*, 179 Or 548, 173 P2d 475 (1946), the court examined whether certain property was subject to an exemption from taxation for "household furnishings." The court said of the term:

"As a noun, the word has been defined as 'persons who dwell together as a family.' *Arthur v. Morgan,* 112 US 495, 5 S Ct 241, 28 L Ed 825. 'The words "family" and "household" are often interchangeably used. A family is a collective body of persons living in one house and under one manager.' * * * *Vaughn v. American Alliance Ins. Co. of New York,* 138 Kan 731, 27 P2d 212."

*Id.* at 553.

Still, it does not necessarily follow that the term always *must* be interpreted so narrowly. At least in the abstract, the term is capable of broader meaning, as the Rohdes suggest. The question for us, however, is not what the term may mean in the abstract, but what it means in the context of the policy in which it appears.

In this case, the endorsement for additional insureds strongly suggests that the parties understood that the term "household" did *not* include the Rohdes. Otherwise, the payment for an endorsement to amend the definition of "insured" to include Todd makes no sense. If Todd were a member of the "household," he already was an insured and no such amendment was necessary. Moreover, the endorsement was for the limited purpose of insuring Todd against liability arising out of his ownership, maintenance, or use of the farm property. If he was a member of the household of his parents, he already was an insured for all purposes, not just those limited to the ownership, maintenance, or use of farm property, as provided in the endorsement.

■       As a rule, we must assume that the parties to an insurance policy did not intend to create meaningless provisions. *Hoffman,* 313 Or at 472. *See also Baumann v. North Pacific Ins. Co.,* 152 Or App 181, 189, 952 P2d 1052, *rev den* 327 Or 621 (1998) ("Oregon law requires that insurance provisions be interpreted reasonably to avoid nullification of other parts of the policy."). We therefore conclude that, in light of the larger context of the policy in which the term appears, and the absence of any contrary indication in the policy, "household" in this case refers to a group of individuals living in a single house, "under the same roof."

The Rohdes insist that recent decisions of this court have rejected the foregoing "limited and straight-jacketed"

definition of household and that those more recent cases hold that whether living under one roof is merely one of several relevant factors in determining whether individuals are members of a household. In particular, the Rohdes rely on *Jordan v. Farmers Ins. Co. of Oregon*, 123 Or App 109, 858 P2d 919 (1993), and *Farmers Ins. Co. v. Jeske*, 157 Or App 362, 971 P2d 422 (1998).

We do not agree with their reading of those cases. Both involved the issue of whether members of a household who previously had lived under the same roof remained "residents" of that household while temporarily out of town. In *Jordan*, we held that a son's physical absence from the family house during a tour of military duty was not dispositive of his status as a "resident" of the family household. We held that "the jury should determine whether the facts establish that there was an intention to live under the same roof and that the physical absence was only temporary." 123 Or App at 112. Likewise, in *Jeske*, we upheld a trial court's determination as a matter of fact that an unemancipated 16-year-old son who had left the family house and did not intend to return was no longer a "permanent resident" of his parents' home. Neither case addressed the issue before us, that is, the physical boundaries of the household.

We conclude that the trial court did not err in entering summary judgment in favor of Enumclaw.

Affirmed.