Argued and submitted January 8, reversed and remanded June 6, 2001

Jennifer WALLER,
*Appellant,*

*v.*

AUTO-OWNERS INSURANCE COMPANY,
a Michigan corporation,
*Respondent.*

AUTO-OWNERS INSURANCE COMPANY,
a Michigan corporation,
*Counterclaim Plaintiff,*

*v.*

Jennifer WALLER,
*Counterclaim Defendant.*

99-CV-0164-AB; A109303

26 P3d 845

Warren John West argued the cause and filed the briefs for appellant.

Tamara E. MacLeod argued the cause for respondent. With her on the brief were Ronald L. Roome and Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Plaintiff initiated this breach of contract action against defendant Auto-Owners, her parents' automobile insurance carrier, to recover underinsured motorist (UIM) benefits. The trial court granted defendant's motion for summary judgment, concluding as a matter of law that, because she was a resident of Oregon at the time of the accident, plaintiff was not covered under her parents' Florida insurance policies. Plaintiff appeals. Because we conclude that a genuine issue of material fact exists, *see* ORCP 47 C, we reverse and remand.

The following background facts, which are not disputed, gave rise to the present controversy. In June 1994, plaintiff, who was 17 years old, moved to a group home in Sisters, Oregon. Her parents, who lived in Florida, sent her to Oregon after numerous failed attempts to enroll her in out-of-state boarding schools because of her behavioral problems. In November 1995, plaintiff was injured when she was hit by an automobile while she was walking in a crosswalk in Bend. She settled her personal injury claim against the driver of the motor vehicle for $25,000, which was the bodily injury liability limit of his policy. Later, she sought additional coverage under two automobile insurance policies maintained by her parents and issued by defendant Auto-Owners.

With respect to the scope of coverage, the relevant portions of the policies provide as follows:

> "LIABILITY COVERAGE
>
> "We will pay damages for bodily injury and damage to tangible property for which you become legally responsible and which involve your automobile. We will pay such damages on your behalf, on behalf of *any relative who lives with you,* or on behalf of any person using your automobile with your permission. * * *
>
> "* * * * *
>
> "UNINSURED MOTORIST COVERAGE
>
> "We will pay damages for bodily injury which any person occupying or getting in or out of an automobile covered by the Liability Coverage of this policy is legally entitled to

recover from the owner or driver of an uninsured motor vehicle. * * *

"If you are an individual, we extend this coverage. We will pay bodily injury damages which you are legally entitled to recover from the owner or driver of any uninsured motor vehicle. We give this same protection to *any relative living with you* who does not own a car."

(Emphasis added.) Pursuant to an endorsement attached to each one entitled "Uninsured Motorist Coverage Amendment (Stacked)," the policies further define "named insured" to mean "the first named insured as stated in the Declarations if an individual * * *, and while residents of the same household, the spouse of any such first named insured and the relatives of either." Finally, the endorsement defines a "relative" as "a person who resides with you and who is related to you by blood, marriage, or adoption."

Plaintiff brought this breach of contract action against defendant to recover UIM benefits pursuant to the foregoing policies. Initially, she sought $475,000 in damages; later, however, she amended her complaint to seek $1,475,000 in damages.[1] In its answer, defendant denied coverage and asserted two affirmative defenses: failure to state a claim and comparative fault. Defendant also brought a counterclaim, seeking a declaration that it was not obligated to pay UIM benefits to plaintiff. Subsequently, defendant moved for summary judgment, arguing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. According to defendant, because plaintiff was living in Oregon at the time of the accident, she was not physically "living with" her parents in Florida; therefore, she was not entitled to UIM benefits under the terms of the insurance policies. Alternatively, defendant contended that plaintiff did not qualify as a "resident" of her parents'

---

[1] Plaintiff's original complaint was based on the liability limits of only one of her parents' insurance polices, which provided for $500,000 of uninsured motorist coverage for each person. Plaintiff's amended complaint was based on the liability limits of both of her parents' policies in effect at the time of the accident, which together provided for a total of $1,500,000 of uninsured motorist coverage for each person. The amount of damages that plaintiff sought in each instance reflects an offset of $25,000 as a result of the settlement with the driver of the motor vehicle involved in the accident.

household. Plaintiff opposed the motion for summary judgment, arguing that the policies extended coverage to relatives who are "residents" of her parents' household, not merely those who are physically living with her parents, and that the record gave rise to a factual dispute on that issue. The trial court agreed with defendant that the only conclusion a jury could reach on the summary judgment record was that plaintiff was not a resident of her parents' household at the time of the injury. Consequently, the trial court granted summary judgment in defendant's favor. On appeal, the parties renew the arguments they made below.

Preliminarily, we must decide what law to apply in this case. Both below and on appeal, the parties proceeded on the assumption that Florida substantive law and Oregon procedural law should apply because, although the present litigation is in Oregon, it involves an action upon an insurance contract entered into in Florida and issued to Florida residents. *See Davis v. State Farm Mut. Ins.*, 264 Or 547, 549, 507 P2d 9 (1973); *Manz v. Continental American Life Ins. Co.*, 117 Or App 78, 80-82, 843 P2d 480 (1992), *modified on recons* 119 Or App 31, 849 P2d 549, *rev den* 317 Or 162 (1993). That approach, however, overlooks a necessary threshold determination in analyzing a conflict of law issue: whether there is a material difference between Oregon substantive law and the law of the other forum. We previously have explained that if there is no material difference—*i.e.*, if there is a "false conflict" instead of an "actual conflict"—Oregon law applies. *See Angelini v. Delaney*, 156 Or App 293, 300, 966 P2d 223 (1998), *rev den* 328 Or 594 (1999). As proponents of Florida law, it was incumbent on the parties to identify material differences in the applicable law of Florida and Oregon. *Id.* Because neither party has done so, we apply Oregon law in our analysis.

We reject defendant's first argument that the policies preclude coverage for plaintiff because she was not physically "living with" her parents at the time of the accident. Defendant argues that coverage is so limited, relying on the text of the coverage provisions that we quoted earlier. That argument, however, overlooks the terms of the endorsement for stacked uninsured motorist coverage contained in both policies. As we described in outlining the relevant policy terms,

the endorsements define "named insured" to include "residents of the same household," and they define "relative" to include "a person who resides with you." It is worth noting that the coverage provisions do not expressly say "physically" living with, and thus there may not be any difference in meaning between that language and the reference in the endorsements to residency. But we need not decide whether the terms mean different things. To the extent that there is a conflict between the terms of an insurance policy and an endorsement, the endorsement controls. *See First Far West Transp. v. Carolina Casualty Ins.*, 47 Or App 339, 344, 614 P2d 1187 (1980). Therefore, we conclude that the question under the policies at issue in this case is whether plaintiff was a "resident" of her parents' household despite the fact that she was living in Oregon.

As our cases reveal, several factors are relevant to the factual question of whether a person is a resident of a household for purposes of an insurance policy extending coverage on that basis. *See Farmers Ins. Co. v. Jeske*, 157 Or App 362, 366-67, 971 P2d 442 (1998); *Jordan v. Farmers Ins. Co.*, 123 Or App 109, 111, 858 P2d 919 (1993). Those factors include whether the persons alleged to be residents of the same household live under one roof; the length of time they have lived together; whether the residence is intended to be permanent or temporary; and whether the persons are financially interdependent.[2] *State Farm Mutual Auto. Ins. Co. v. McCormick*, 171 Or App 657, 661, 17 P3d 1083 (2000); *Jeske*, 157 Or App at 366. In cases involving the residency of a child

---

[2] As we discussed, the parties only cite and rely on Florida law without explicitly discussing or identifying how Florida law materially differs from Oregon's in this area. One difference is suggested, however, by defendant's reliance on *Philbin v. American States Ins. Co.*, 729 So 2d 484 (Fla Dist Ct App 1999), for the proposition that the so-called "same roof" test is determinative in Florida. We disagree with that understanding of Florida's case law, however. Although that factor proved dispositive under the particular facts in *Philbin*, the opinion does not suggest that Florida courts look to a "same roof" to the exclusion of any other fact or factor. To the contrary, our review of Florida's reported decisions reveals that they use a multi-factor analysis of residency for insurance policy purposes and disavow any bright-line test. *See Sutherland v. Glen Falls Ins. Co.*, 493 So 2d 87, 88-89 (Fla Dist Ct App 1986); *Row v. United Services Automobile Assoc.*, 474 So 2d 348, 349 (Fla Dist Ct App 1985); *General Guaranty Ins. Co. v. Broxsie*, 239 So 2d 595, 598 (Fla Dist Ct App 1970).

who is away from the parents' home due to military service or college, additional considerations come into play, such as whether the child: lived at home before military service or attending school; returns home on leaves and vacation; keeps significant personal items at the parents' home; uses that home address as a permanent address; continues to be supported financially by his or her parents; has failed to take actions to establish a permanent residence elsewhere; and expresses an intent to return to the parents' home. *Jeske*, 157 Or App at 366-67; *Jordan*, 123 Or App at 112.[3] Significantly, no one factor is dispositive. *McCormick*, 171 Or App at 661. For purposes of the residency analysis, summary judgment is inappropriate unless the evidence reveals a factual situation from which only one inference can be drawn. *Id.*; *Jeske*, 157 Or App at 366.

■     Viewing the record in this case in the light most favorable to plaintiff, as the party opposing the motion for summary judgment,[4] we conclude that competing conclusions reasonably could be drawn with respect to plaintiff's residency. In the spring of 1994, plaintiff's parents sent her to Oregon to live in a group home due to her behavioral problems. While living there, plaintiff successfully completed her GED. Later that fall, plaintiff enrolled in classes at Central

---

[3] At oral argument, defendant argued that Florida law considers factors other than residency under the "same roof" only for children serving in the military and does not similarly make such an "exception" for children attending college. As we have already discussed, we do not agree that Florida law limits the analysis to a "same roof" test generally. Equally significant, however, there is ample authority in Florida recognizing, as Oregon cases do, that children who are temporarily away from their parents' home for purposes of attending a college or university can remain residents of their parents' household. *See Seitlin & Co. v. Phoenix Ins. Co.*, 650 So 2d 624, 625 (Fla Dist Ct App 1995) (citing 7A John A. Appleman, *Insurance Law and Practice* § 4501.08 at 262-63 (Berdal ed 1979) for the proposition that "[s]tudents who are temporarily away at school, whose tuition and expenses are provided by parents, and who maintain some possessions at the home of their parents remain residents"); *Trezza v. State Farm Mut. Auto. Ins. Co.*, 519 So 2d 649, 652 (Fla Dist Ct App 1988) (holding that a person enlisted in the military remained a resident of his former household in the absence of a manifest intention to alter his residence); *Broxsie*, 239 So 2d at 597. Thus, again, we find no material difference between Florida and Oregon law that requires us to analyze the question under Florida precedents.

[4] *See* ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Oregon Community College (COCC). On her college "Registration/Application" forms, plaintiff checked a box that indicated "I currently maintain a permanent residence in the COCC district."[5] That representation allowed her to pay instate, in-district tuition. She also signed those forms, "attesting that all information [contained therein] is true." On those same forms, she listed an Oregon mailing address (a post-office box) but left blank the area for her permanent address. In June of 1995, plaintiff moved into an apartment in Bend, and she continued taking classes at COCC. Her father co-signed the lease for the apartment, and he sent her $900 every month for expenses ($400 of which covered rent). Plaintiff registered for utilities in her own name. She also opened an Oregon bank account. In August 1995, plaintiff applied for and received an Oregon driver's instruction permit. To obtain that permit, she filled out and submitted an application to the Driver and Motor Vehicle Services Branch (DMV) listing an Oregon residence address and affirming that the information on the application was true.

As of November 1995, when plaintiff was injured in the accident, she had not returned to Florida for any vacations or visits since moving to Oregon. Plaintiff's parents, however, continued to maintain a bedroom for her in their house, and some of plaintiff's possessions remained there. When specifically asked at her deposition whether she intended to return to Florida, plaintiff's answers were equivocal. In answering whether, before the accident, she planned to return to live at her parents' house, she stated:

> "I don't recall. I don't think I really—I figured I would go to school, and then—kind of like now, I don't know what I am going to do when I get my bachelor's degree. I didn't know. I didn't really think about it."

When defendant's counsel tried to pin down in which state, as between Florida and Oregon, she believed she was a resident, plaintiff responded:

---

[5] The school policy pertaining to "Enrollment Services and Costs" provided that:

> "An individual who has maintained a permanent and continuous residence in the district for the 90 days prior to the beginning of the quarter will be classified as an in-district resident."

"Well, I think that I move around a lot and I have no idea where I am going to be from day-to-day, but I know where my parents are going to be. I don't have things mailed directly to them, because DMV needs to know where I live so they can get me stuff.

"And the school, I asked COCC and Eastern both, and they said there are things that you need to know about, and if your parents have to send it back to you, then that's not beneficial to you. So I don't know where I am a resident of. I am nomadic. * * * I am kind of both. I am in between."[6]

In response to defense counsel's question as to whether she intended to return to live with her parents when she moved into her first apartment, plaintiff replied:

"I was just living in my apartment to go to school. I don't—I didn't think about it. I mean, when I first got here, it was not my favorite place, I'll tell you that much. I definitely intended on leaving. * * * I figured I would get my degree and then decide on where I wanted to work."

Further questioning about where she would live if she returned to Florida resulted in the following exchange:

"Q. Okay. Would you move into your parents' house or do you think you would live in your own place?

"A. I would try to leech off my parents. I would do the best I could to stay there. I would like to do that. It's a great house, and I haven't lived with them for a while, I would like to try to do that.

"Q. Okay. So let's go back to '95 and let's go to when you move into your apartment, into that first apartment. Was it your plan to finish school and then return to their house and live with them in Florida?

"A. Probably—you mean—that's probably the most likely plan that I had. I mean, that's one place that I always knew that I could go, and so, yeah, I always—I can always go there. So it's probably—you know, I don't really remember

---

[6] On appeal, defendant also argues that this portion of plaintiff's deposition, on which plaintiff relies, and the following portions as well, were not before the trial court. We disagree. Those portions of her deposition were contained in Exhibit 2, which was attached to plaintiff's opposition to defendant's motion for summary judgment. Therefore, they were part of the record on summary judgment and are part of the record on appeal.

what was going on. I know that I didn't like it here, so — and I can always go there."

Plaintiff also testified that "as far as anywhere else, [Florida is] definitely the most likely place that I would go." Finally, defendant's counsel asked: "So even though you've been in Oregon since '94 and you have your driver's license in Oregon and you live here, you only consider yourself a temporary resident of Oregon?" Plaintiff responded: "Yes, I do." A follow-up question by plaintiff's counsel revealed that she always regarded her parents' home as her permanent residence.

The statements that plaintiff made in her deposition do not establish a specific intent to return to her parents' home; however, they also do not establish a clear intent to abandon her parents' home as her residence. Given the circumstances under which plaintiff moved to Oregon to live in a group home and attend school, her leaving Florida could be viewed as only a temporary arrangement. At most, the record reveals that plaintiff is a college student who has uncertain plans for her future. She has taken steps to achieve her independence, but she also remains dependent on her parents for financial support. In short, the record provides at least a basis from which a jury could find that plaintiff intended to remain a resident of her parents' household while living in Oregon and attending school. That is sufficient to create a jury question on the issue of residency.

In arguing to the contrary, defendant contends that the objective facts overwhelmingly support its claim that plaintiff is a resident of Oregon, not of her parents' household in Florida. Defendant primarily relies on plaintiff's signed sworn statements of Oregon residency for tuition purposes and driving privileges. Defendant also emphasizes that plaintiff received all of her mail in Oregon, opened a bank account in Oregon, and did not return to her parents' house in Florida between the time that she arrived in Oregon and her injury from the accident.

None of those facts precludes a jury question on plaintiff's *actual* intent, however. The factors that we have considered in our cases involving children who are away from their parents' homes while attending school or serving in the military reflect the reality that the individuals involved are

young adults in transition to independent adulthood. The essential inquiry is whether they have made that transition. Unless and until they form the intent *not* to return home, they remain residents of their parents' homes. Regarding the college and DMV forms, plaintiff explained her residency representations on those forms as reflecting her belief that Oregon law and her school's policy required that she have lived in Oregon for at least six months. Plaintiff's credibility in that regard would be for a jury to assess. If the jury were to find that testimony to be truthful, the jury could conclude that plaintiff merely misunderstood the residency requirements when she filled out those forms. Alternatively, the jury might disbelieve plaintiff's explanation and conclude that plaintiff lied on the forms. To be sure, there would be nothing commendable about plaintiff doing so, if that is what a jury were to find occurred. But residency for purposes of insurance coverage depends on plaintiff's actual intent; her representations on those forms are not legally conclusive on the point. Notwithstanding plaintiff's representations on the college and DMV forms, a jury might conclude on this record that plaintiff was in the same position as are many college students—she was unsure what she would do after college and had not yet formed an intent to move permanently from her parents' home.[7]

Regarding plaintiff's Oregon bank account, mailing address, and failure to visit home, all of those are facts to which a jury *could* give weight in concluding that plaintiff no longer was a resident of her parent's home. But we consider none of them to compel any particular weight as a matter of law. Opening an out-of-town or out-of-state bank account, or maintaining a local bank account, is commonplace for persons temporarily residing in other locations to attend college

---

[7] In addition, defendant relies on other events that occurred after the accident as evidence of plaintiff's intent, including that plaintiff transferred credits to and enrolled in classes at Eastern Oregon University, that she registered to vote in Oregon, and that she ultimately obtained an Oregon driver's license, all of which required her to sign statements indicating that she was an Oregon resident. At the hearing held on defendant's motion for summary judgment, the trial court pointed out to defendant that the crucial time period involves plaintiff's intent before the accident and limited its consideration of the evidence only to the extent it was relevant to that inquiry. We agree with that characterization of the relevant inquiry and so limit our consideration of the evidence as well.

or serve in the military. The failure to visit home may be considered by a jury, but legally it is not decisive. What import and weight to give those facts is classically for a jury to decide. *See McCormick*, 171 Or App at 664.

In sum, viewing the record in the light most favorable to plaintiff, we conclude that the evidence could support competing findings as to whether, given living arrangements at the time of the accident, she remained a resident of her parent's household. The trial court therefore erred in granting defendant's motion for summary judgment.

Reversed and remanded.