Argued and submitted February 18, reversed and remanded December 27, 2000

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Appellant,*

*v.*

### Bonnie McCORMICK and Kirk McCormick,
*Respondents.*

### Bonnie McCORMICK,
*Third-Party Plaintiff,*

*v.*

### Gary HANDYSIDE,
*Third-Party Defendant.*

(98-305; CA A106581)

17 P3d 1083

Emil R. Berg argued the cause for appellant. With him on the briefs was Yturri Rose LLP.

W. Eugene Hallman argued the cause and filed the brief for respondents.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff State Farm Mutual Automobile Insurance Company (State Farm) brought this declaratory judgment action, seeking a determination of its duty to provide underinsured motorist coverage to its insureds, defendants Kirk and Bonnie McCormick, for injuries Bonnie sustained in an automobile accident while riding as a passenger in her daughter Jillian's car. Defendants presented a counterclaim for breach of contract that also raised the issue of coverage and further sought damages under their policy with State Farm. The case was bifurcated for trial, and the declaratory judgment claim was tried first. On the parties' cross-motions for summary judgment, the trial court granted defendants' motion for summary judgment and denied State Farm's motion, determining that defendants were entitled to coverage under the underinsured motorist provisions of the policy. The court ordered that the matter be set for trial on the defendants' claim and entered judgment for defendants on State Farm's declaratory judgment action under ORCP 67 B. State Farm appeals, and we reverse.

On October 28, 1996, Bonnie was injured in an automobile accident while riding as a passenger in her daughter's car. Jillian was at fault. Jillian's vehicle, a 1985 Ford Tempo, was insured by Farmers Insurance Company under a policy that she owned providing liability limits of $50,000 per person and $100,000 per accident. At the time of the accident, defendants were insured under a policy with State Farm providing uninsured/underinsured motorist coverage in the amount of $300,000 per person and $500,000 per accident. Defendants alleged in their counterclaim that Bonnie's injuries were in excess of $300,000. They sought coverage for Bonnie's injuries under the underinsured motorist coverage of their State Farm policy.

Jillian was living in the family home at the time of the accident. State Farm maintains that Bonnie is not entitled to underinsured motorist coverage, because the policy expressly excludes coverage for bodily injury to an insured "[w]hile occupying a motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage under this

policy[.]" State Farm acknowledges, and defendants agree, that the policy's exclusion must be interpreted to provide no less coverage than that required by ORS 742.504(4)(b):

> "This coverage does not apply to bodily injury to an insured while occupying a vehicle (other than an insured vehicle) owned by, or furnished for the regular use of, the named insured or any relative *resident of the same household* * * *."[1] (Emphasis added.)

The only question on appeal is whether the trial court correctly determined on summary judgment that Jillian was not a "resident of the same household" as her mother at the time of the accident.

■ For the purpose of determining coverage under an insurance contract, the question of whether a person is a resident of a household is a question of fact. *See Waller v. Rocky Mtn. Fire & Casualty*, 272 Or 69, 71-72, 535 P2d 530 (1975) (reasonable inference could be drawn from evidence to support trial court's finding that the plaintiff was a resident of the insured's household); *Farmers Ins. Co. v. Jeske*, 157 Or App 362, 971 P2d 422 (1998) ("Consistently and for many years, the case law has considered a person's status as a resident of a household to be a question of fact."); *Lang v. Foremost Ins. Co.*, 98 Or App 161, 778 P2d 510 (1989) (evidence supported trial court's finding that persons seeking coverage as residents of same mobile home were only temporary guests and not members of household); *Farmers Insurance Company v. Stout*, 82 Or App 589, 728 P2d 937 (1986), *rev den* 302 Or 657 (1987) (trial court's finding that decedent and defendant were members of same household is binding unless no evidence supports it); *compare Schehen v. North-West Insurance*, 258 Or 559, 484 P2d 836 (1971) (evidence insufficient as a matter of law to permit finding that driver was member of insured's household, because the two did not dwell together) *with Jordan v. Farmers Ins. Co.*, 123 Or App 109, 111, 858 P2d 919 (1993) (the fact that the son was not living under the same roof as his mother while he was in the military was not dispositive of question whether he was a resident of her household).

---

[1] The policy defines "relative" as a relative "who lives with you."

■   Whether a person is a member of the household becomes a question of law only in those instances when the "evidence does not disclose a factual situation from which it can be said that differing inferences can be drawn." *Garrow v. Pennsylvania Gen. Ins. Co.*, 288 Or 215, 220, 603 P2d 1175 (1979); *Jeske*, 157 Or App at 366. Summary judgment is not appropriate unless the evidence reveals a factual situation from which *only one* inference can be drawn. *Id.; Oregon Mut. Ins. Co. v. Clemens*, 124 Or App 155, 861 P2d 372 (1993); *see Waller*, 272 Or at 75.

■   The factors that have been identified as relevant to the factual inquiry of whether a person is a member of a household include: (1) whether the parties live under one roof; (2) the length of time they have lived together; (3) whether the residence is intended to be permanent or temporary; and (4) whether the parties are financially inter-dependent. *Stout*, 82 Or App at 593. No one factor is disposi-tive. *Id*. As we said in *Jeske*, those factors collectively point to the common inquiry of whether the insured and others in the household intend for the insured's house to be their place of permanent residency and reasonably act on that intent.[2]

The facts here are largely undisputed. Only the inferences to be drawn from them are in dispute. The trial court found that at all material times Jillian lived in her par-ents' home. From January 1996, Jillian worked 30 hours per week at the Baker City Dairy Queen. On the day of the acci-dent, Jillian was to begin working full time with another employer at a higher wage. Before she purchased the car from her parents in September 1996, Jillian had occasional permissive use of the Tempo. Jillian graduated from high

---

[2] The issue here is whether Jillian was a member of defendants' household. Recently, in *Mutual of Enumclaw Ins. Co. v. Rohde*, 170 Or App 574, 13 P3d 1006 (2000), we were required to determine the meaning of the term "household" as it was used in a contract of insurance. We held that the ordinary meaning of the term "household," in the context of the policy in which it appeared, is "a group of individ-uals living in a single house, 'under the same roof.'" *Id*. at 580. We held that, because the son and daughter-in-law resided in a separate house, they were not members of the parents' household. *Rohde*, which was about the physical bounda-ries of the household, does not control here, where the issue is whether Jillian was a *member* of the household. There is no dispute that Jillian and her parents lived under the same roof.

school in June 1996. She did not have an interest in attending college. In August 1996, her father told her that if she had no plans for college she would have to start paying room and board. Defendants requested $100 per month and would require that Jillian abide by family rules and curfew. Jillian said that she wanted complete freedom and did not want to abide by family rules. Defendants accordingly offered her the alternative to pay $150 per month[3] for her room and have the freedom to come and go without restrictions, except that she was not permitted to drink in the house or have male visitors in her room. Jillian accepted that arrangement.

Thereafter, Jillian accepted no further financial assistance from her parents. Near the end of August 1996, defendants became aware that Jillian planned to move out of the family home and live with her fiancé. After that, Jillian spent little time at home, except to sleep, pick up her mail, and make telephone calls. She reimbursed her parents for any long distance calls. In view of Jillian's plan to move out, defendants offered to sell Jillian some furniture, on which she began making payments. Defendants later forgave the debt as a wedding gift. In September, defendants sold Jillian the Tempo for $1,000, to be paid in $50 installments. They removed Jillian from their automobile insurance policy, and Jillian purchased her own insurance. She paid for all maintenance on the car, as well.

Defendants claimed Jillian as a dependent for 1996 on their state and federal income tax returns. Jillian did not claim herself as a dependent on her own tax returns. Jillian was covered by her parents' health insurance until she turned 19, which was after the time in question. Jillian also had her own supplemental health insurance through the Oregon Health Plan for which she paid $6 per month.

The trial court found on the record on summary judgment that Jillian's residence at her parents' home was temporary, because she planned to move out soon. Further, the court found that Jillian and her parents were no longer financially interdependent or subject to each others' control

---

[3] There was evidence that $150 per month was the market rate for a room with kitchen and bath privileges in Baker City.

or authority. The court found that "[i]t was as if [Jillian] lived in a boarding house as a tenant," and concluded that the only possible inference under the undisputed facts was that Jillian was not a resident of her family's household.

■ We must disagree with the trial court's conclusion that only one possible inference is possible on the record on summary judgment. Viewing the record, as we must, in the light most favorable to State Farm as the party opposing the motion, *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1996), we conclude that the evidence on summary judgment could support a finding that, despite recent steps toward independence, Jillian was a member of her parents' household at the time of the accident.

The first two factors undisputedly would support a finding that Jillian was a member of the household. She had lived in her parents' home for all of her 18 years. As to the third factor, there was evidence from which it could be found that Jillian was a "permanent" resident of her parents home. She had lived in her parents' home all her life, and she intended to live there until she could afford to live independently. Although Jillian had plans to move out, that did not necessarily mean that her residency was temporary, any more than any child's living arrangement with parents is temporary. Most do move out eventually. Jillian's plans to move out in the near future did not necessarily render her life-long residency in the family home a temporary arrangement.

There was also evidence of financial interdependence. For example, there was evidence from which it could be found that Jillian used parts of the home other than her bedroom, that she occasionally shared food purchased by defendants, that she spent time with defendants, and that she shared in the housework. In her deposition, Jillian herself characterized her life at home as "a normal family relationship," and said that her living expenses increased when she moved out.

The trial court appeared to focus, in part, on the fact that, in paying rent and her own expenses, Jillian had freed herself from her parents' control. However, whether a person is free of "control" of another person is not one of the factors

the cases identify as relevant to the inquiry of whether the person is a member of the household. Furthermore, there was evidence from which it could be found that Jillian was still subject to her parents' control in certain aspects of her life.

In summary, we conclude that there is evidence in the record on summary judgment from which a factfinder could make differing inferences about whether Jillian was a resident of her parents' household. For that reason, the trial court erred in granting defendants' motion for summary judgment. For the same reason, we reject plaintiff's contention that the trial court erred in denying its own motion for summary judgment on the question of liability.

Reversed and remanded.