576 S.E.2d 261

**FARMERS MUTUAL INSURANCE COMPANY, a West Virginia corporation, Plaintiff Below, Appellee**

v.

**Hubert Junior TUCKER, Defendant Below, Appellant.**

**Hubert Junior Tucker, Third–Party Plaintiff Below, Appellant**

v.

**Darrell Lee Taylor, Leonard Locie Taylor, and Other Individuals Presently Unknown, Third–Party Defendants Below, Appellees.**

No. 30469.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Dec. 4, 2002.

Dissenting Opinion of Chief Justice Davis Dec. 6, 2002.

Dissenting Opinion of Justice Maynard Dec. 9, 2002.

Concurring Opinion of Justice Albright Dec. 12, 2002.

William V. DePaulo, Ross & DePaulo, P.L.L.C., Hurricane, for Appellant.

David A. Sims, Gregory R. Tingler, Law Office of David Aaron Sims, Elkins, for Appellee Farmers Mutual Insurance Company.

STARCHER, Justice:

In this appeal from the Circuit Court of Putnam County, we are asked to review a circuit court order granting summary judgment to an insurance company in a declaratory judgment action. The circuit court was asked to interpret language in a liability insurance policy that defined persons insured as including "your relatives if residents of your household." In its order, the circuit court ruled that a tortfeasor, who lived on his father's farm in a mobile home separate from his father's insured residence, was not a relative who was "residing" in his father's "household." The circuit court therefore concluded that the tortfeasor was not insured by the liability insurance policy.

As set forth below, we reverse the circuit court's order.

## I.

### *Facts & Background*

On July 25, 1996, appellant Hubert Junior Tucker drove to a farm owned by appellee Locie Taylor. The Taylor farm raised and sold pigs commercially, and Mr. Tucker came intending to buy a pig. Locie lived in a mobile home on the farm, and had purchased a second mobile home on the farm in which his son, thirty-eight-year-old appellee Darrell Lee Taylor, lived. The two mobile homes are between 50 and 100 yards apart. Darrell Lee worked on the farm for his father.[1]

Mr. Tucker drove to Darrell Lee's mobile home. After knocking on the door, Mr. Tucker noticed smoke coming from the mobile home, and believing that Darrell Lee was inside, began beating on the side of the mobile home. When he received no response, Mr. Tucker kicked in the front door of the mobile home in an attempt to rescue Darrell Lee.

It appears from the record that Darrell Lee was a chronic alcoholic,[2] and had apparently passed out inside his mobile home while rendering lard or cooking sausage in a skillet on the stove. Darrell Lee woke up to find his mobile home filling with smoke, and

1. The briefs of the parties suggest that Darrell Lee had lived on his father's farm virtually his entire life, having lived off the property only briefly during an unsuccessful marriage. The briefs also suggest that Darrell Lee only had one job off of the farm, as a janitor at the local dog track for less than 12 months. While the appellant suggests that Darrell Lee was fired from this job for excessive drinking, Darrell Lee testified he quit the job for one reason: "Too many rednecks."

2. Darrell Lee testified to drinking four to five beers on July 25, 1996, but denied that this was a lot of beer. When asked what he considered to be a lot of alcohol, he answered "Well, you drink about four or five cases, that would be a lot of beer."

3. In a case separate from the instant declaratory judgment action, Mr. Tucker sued Locie asserting two different theories. He asserted that Locie was liable for the actions of his son simply as the owner of the property, or in the alternative was liable on the ground that Darrell Lee was Locie's employee, and that Locie had negligently supervised his employee. The parties stipulated that Darrell Lee was "at fault for Junior Tucker's physical injuries." The circuit court severed the

grabbed the burning skillet from the stove. Darrell Lee then carried the skillet to the front door, intending to throw it out so that his mobile home did not catch on fire.

Mr. Tucker, who had just kicked in the door to the mobile home, was severely burned when the skillet of flaming grease was thrown through the doorway by Darrell Lee. Mr. Tucker subsequently brought suit against Darrell Lee and his father, Locie, for negligence, and Darrell Lee has since admitted he was at fault for Mr. Tucker's injuries.[3] Locie and Darrell Lee sought coverage from Locie's property insurance company, appellee Farmers Mutual Insurance Company ("Farmers Mutual"), to defend against the lawsuit. The property insurance policy provided liability coverage for any of Locie's "relatives if residents of [Locie's] household." At issue in this litigation is whether Locie's son, Darrell Lee, is a relative covered by the Farmers Mutual policy.

Farmers Mutual initiated the instant declaratory judgment action against Mr. Tucker, contending that Darrell Lee was not an "insured" covered by the liability insurance policy purchased by Locie. Specifically, Farmers Mutual asserted that Darrell Lee was not a resident of Locie's household.[4]

action against Locie and tried the action separately from the claim against Darrell Lee. The jury returned a verdict in favor of Locie.

Mr. Tucker did not appeal the jury's verdict.

4. On February 26, 1997, Farmers Mutual and Darrell Lee entered into an agreement such that Darrell Lee agreed to waive all coverage under Locie's insurance policy. In exchange for this waiver of coverage, the insurance company agreed to pay the legal fees to defend Darrell Lee in the action brought against him by Mr. Tucker. At the time of the agreement, it appears from the record that Darrell Lee had no property or other assets from which Mr. Tucker could expect to recover, other than the proceeds of the insurance policy issued by Farmers' Mutual.

While the appellant did not challenge the propriety of the agreement, below or before this Court, it appears that the validity of such an agreement is questionable under the insurance laws of West Virginia. *W.Va.Code*, 33-6-21 [1957] states:

No insurance policy insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person,

After conducting discovery, each party filed a motion for summary judgment. On August 27, 2001, the circuit court entered an order granting Farmers Mutual's motion and denying Mr. Tucker's motion. In its order, the circuit court concluded that there were no genuine issues of material fact, and that Darrell Lee was clearly not a member of his father's household. The circuit court determined, on the record presented to the court, that as a matter of law Darrell Lee was not entitled to liability insurance coverage under Locie's homeowner's insurance policy.

Mr. Tucker now appeals the circuit court's August 27, 2001 order.

## II.

### Standard of Review

We review a circuit court's order granting summary judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellant. *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

## III.

### Discussion

The appellant, Mr. Tucker, argues that the insurance policy at issue provided liability coverage for relatives such as Darrell Lee who "resided" in Locie's "household." Mr. Tucker argues that the term "household" is an ambiguous, flexible, family-oriented con-

cept. He takes the position that, because the term is ambiguous, it may be construed broadly to allow an extensive factual inquiry by a jury to determine whether someone is residing in a particular household. Mr. Tucker contends that because Darrell Lee lived on his father's land, in a mobile home purchased by his father, he was residing on the property as a member of his father's "household."

The appellee, Farmers Mutual, argues that the term "household" is a clear, well-defined term, and is not subject to a broad construction. The insurance company argues that "household" means a collection of persons who live together under the same roof, not those living in separate abodes.

The parties agree that the homeowners' insurance policy at issue listed only Locie Taylor on the declarations page as the "named insured." The policy provided liability coverage, stating that the insurance company would pay for "all sums for which an *insured* is liable by law because of bodily injury[.]" (Emphasis added.) The policy defines "insured" to include "you," meaning "the person ... named on the Declarations"—that is, Locie—and to include "your relatives if residents of your household."

Farmers Mutual argues that the policy language at issue is not ambiguous, and has previously been applied by this Court to deny coverage. In *Spangler v. Armstrong*, 201 W.Va. 643, 499 S.E.2d 865 (1997) (*per curiam*), we addressed a question regarding whether relatives of an insured were "residents of [the insured's] household." The relatives lived in a house owned by the insured. However, the relatives paid the mortgage, taxes and utilities on the house. Furthermore, the house was separate from the property on which the insured lived, and the insured visited his relatives only once or twice a month. On these facts, we concluded that the word "household" in the disputed insurance policy was clear and unambiguous, and held that the relatives were not members of the insured's household.

---

shall be retroactively annulled by any agreement between the insurer and the insured after the occurrence of any such injury, death, or

damage for which the insured may be liable, and any such attempted annulment shall be void.

In *Spangler*, we stated that "liability policies providing coverage for members of an insured's 'household' *generally* include persons who live under the same roof, but not those who live in separate houses." 201 W.Va. at 646, 499 S.E.2d at 868 (emphasis added). In the instant case, the facts are substantially different, and we must revisit our holding in *Spangler* to consider those circumstances where a person does not live under the same roof as an insured, but contends he or she is a member or resident of the insured's household. In sum, we are asked by the appellant to again consider whether the phrase "residents of your household" is ambiguous and subject to interpretation.

▇▇▇ We begin by noting several axioms of insurance law. We held in the Syllabus of *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970) that, on the one hand, ·"[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." On the other hand, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Under West Virginia's law, an insurance policy is considered to be ambiguous if it can reasonably be understood in two different ways or if it is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning. *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997); *Prete v. Merchants Property Insurance Company of Indiana*, 159 W.Va. 508, 223 S.E.2d 441 (1976). When the words of an insurance policy are, without violence, susceptible of two or more interpretations, that which will sustain the claim and cover the loss must be adopted. *See Raffel v. Travelers Indemnity Co.*, 141 Conn. 389, 392, 106 A.2d 716, 718 (1954) ("When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted.").

▇▇▇ Courts considering whether a person has met the residence requirements of an insurance policy have usually concluded that the question is one of fact, not law. As one court stated:

> . . . "[t]o reside" and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found. The word "residence" has been described as being "like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense."

*Amco Ins. Co. v. Norton*, 243 Neb. 444, 447, 500 N.W.2d 542, 545 (1993) (citations omitted).

▇▇▇ "The word 'resident' certainly may include more than one place." *Aetna Cas. & Sur. Co. v. Shambaugh*, 747 F.Supp. 1203, 1205 (N.D.W.Va.1990). This conclusion is apparent from the definition of "residence" contained in *Black's Law Dictionary*, which states that residence must be distinguished from domicile:

> As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home.

*Black's Law Dictionary* 1309 (6th Ed.1990). This Court has acknowledged the flexible, fact-intensive nature of the word "residence," and held that while a person may have only one true domicile, he or she may have more than one "residence." As we stated, in *Lotz v. Atamaniuk*, 172 W.Va. 116, 118, 304 S.E.2d 20, 23 (1983), that "[d]omicile and residence are not synonymous. A man may have several residences, but only one domicile." [5]

**5.** We have, however, concluded, for purposes of interpreting the word "residence" in election

laws and laws pertaining to jurisdiction in divorce actions, that the terms "residence" and

Similarly, courts analyzing the word "household" in insurance policies have usually concluded that the question of whether a household exists is one of fact, not law. One court found the term "household" to be "a chameleon like word," *Cobb v. State Security Ins. Co.*, 576 S.W.2d 726, 738 (Mo.1979), while another found that the "terms have no absolute meaning. Their meaning may vary according to the circumstances." *Cal–Farm Ins. Co. v. Boisseranc*, 151 Cal.App.2d 775, 781, 312 P.2d 401, 404 (Cal.App.1957). A New Jersey court stated:

> Household is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits. True, it is frequently used to designate persons related by marriage or blood, who dwell together as a family under a single roof.... But it has been said also that members of a family need not in all cases reside under a common roof in order to be deemed a part of the household.

*Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, Switzerland*, 35 N.J. 1, 8, 170 A.2d 800, 804 (1961).

Combining these two terms, the phrase "resident of your household" has been found by most courts to have a variety of meanings in an insurance policy, depending upon the facts to which the phrase is to be applied. *See, e.g., Rathbun v. Aetna Cas. & Sur. Co.*, 144 Conn. 165, 168, 128 A.2d 327, 329 (1956) (the meaning "depends on the circumstances in which it is used as well as on the nature of the matter in which its interpretation is required.") "The phrase 'resident of the household' has no fixed meaning. The reasonable interpretation of the phrase requires a case-specific analysis of intent, physical presence, and permanency of abode." *Farm-*

*ers Automobile Ins. Assoc. v. Williams*, 321 Ill.App.3d 310, 254 Ill.Dec. 231, 234, 746 N.E.2d 1279, 1282 (2001) (citations omitted). Courts have often held that the phrase "cannot be so limited and strait-jacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house under one common head or manager." *Johnson v. State Farm Mut. Auto. Ins. Co.*, 252 F.2d 158, 161 (8th Cir. 1958). It is true that the word "household" is frequently used to designate persons related by blood or marriage dwelling together as a family under a single roof. But numerous cases have held that members of a family need not actually reside under a common roof in order to be deemed part of the same household.

For example, in *Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, Switzerland*, 35 N.J. 1, 170 A.2d 800 (1961) the insured owned a piece of property on which two houses were located. The insured lived in one house, which was covered by a homeowner's policy, and his wife—from whom he was separated—and son lived in an adjacent cottage on the property. When the wife sought indemnification under the homeowner's policy for a judgment against her in a tort action, the court held that the wife was a member of the insured's "household" because the facts supported the insured's belief that the premises "was all one place where the entire family was living." 35 N.J. at 15, 170 A.2d at 808.

Numerous other cases have found a child of divorced or separated parents—even though living primarily under the roof of only one parent—was a "resident" of both parents' "households" for purposes of insurance coverage.[6] Courts note that children often

---

"domicile" are synonymous. *See, e.g.,* Syllabus Point 7, *White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470 (1984) ("In West Virginia, the term 'residence' is synonymous with the term 'domicile' for election law purposes."); *Vachikinas v. Vachikinas*, 91 W.Va. 181, 185, 112 S.E. 316, 318 (1922) ("Most statutes give a resident or one domiciled in the state a right to sue for divorce, 'residence' and 'domicile' being synonymous in most cases."); *Taylor v. Taylor*, 128 W.Va. 198, 204, 36 S.E.2d 601, 604 (1945) ("The word residence, as used in divorce statutes, is almost universally construed to be the equivalent of domicile.").

6. Some courts have even held that a spouse who has left the insured marital home as part of a trial separation, or even intending to seek a divorce, has remained, for insurance purposes, a "resident" of the marital "household." *See, e.g., Nationwide Mut. Ins. Co. v. Allison*, 51 N.C.App. 654, 277 S.E.2d 473 (1981) (insured's wife was a resident of insured's household at time of automobile accident, even though she and insured had experienced domestic difficulties just prior to her departing on car trip and she stayed with and had sexual relations with driver en route); *Reserve Ins. Co. v. Apps*, 85 Cal.App.3d 228, 149 Cal.Rptr. 223 (1978) (wife was a resident of her

leave belongings at both homes, have a room or area of their "own" in each home, and until the child expresses another intent, generally hold that the child is a resident of both homes. *See, e.g., Simmons v. Insurance Co. of North America,* 17 P.3d 56 (Alaska 2001); *Aetna Cas. & Sur. Co. v. Shambaugh,* 747 F.Supp. 1203 (N.D.W.Va.1990); *Mutual Service Cas. Ins. Co. v. Olson,* 402 N.W.2d 621 (Minn.App.1987); *Alava v. Allstate Ins. Co.,* 497 So.2d 1286 (Fla.App.1986); *Cal–Farm Ins. Co. v. Boisseranc,* 151 Cal.App.2d 775, 312 P.2d 401 (1957). *See also,* Annotation, *Who is "Resident" or "Member" of Same "Household" or "Family" as Named Insured, Within Liability Insurance Provision Defining Additional Insureds,* 93 A.L.R.3d 420 (1979).

Another common class of cases where courts usually find coverage involves children who have temporarily left their parents' insured house to pursue an education, a job, extensive medical treatment, or to join the armed forces. These individuals often establish a residence a substantial distance from the insured house, and maintain that residence for an extended period. When the facts establish that the child continues to call and treat their parents' house as "home," leaving their belongings there and returning when possible, courts usually find that the child is an insured "resident" of their parents' "household." *See, e.g., Atlanta Cas. Co. v. Powell,* 83 F.Supp.2d 749 (N.D.Miss.1999) (minor child of divorced named insured resided in insured's household at time of occurrence, even though child was undergoing residential chemical dependency treatment, and even though named insured expressed an intent to send child to live with ex-spouse upon completion of treatment). *Wood v. Mutual Service Casualty Ins. Co.,* 415 N.W.2d 748 (Minn.App.1987) (son was a resident of his parents' household and covered under automobile policy, even though son joined Army at age 17); *Row v. United Services Automobile Assoc.,* 474 So.2d 348 (Fla.App.

1985) (son with mental illness lived alone in apartment in complex owned by insured father, but was a member of father's household because he paid no rent or security deposit, signed no lease, had a key to father's apartment, socialized, ate, cooked, did laundry and bathed in father's apartment, and received money from father); *Crossett v. St. Louis Fire & Marine Ins. Co.,* 289 Ala. 598, 269 So.2d 869 (1972) (college student living in a dormitory was a resident of his parents' household, because he kept a room in the family home, came home on breaks, stored personal belongings there, listed his parents' address on his driver's license, and registered for the draft near his parents' home); *State Farm Mut. Auto. Ins. Co. v. Elkins,* 52 Cal.App.3d 534, 125 Cal.Rptr. 139 (1975) (nineteen-year-old daughter lived in a separate apartment as a temporary experiment to test her independence; she still maintained a bedroom in the family house; saw her parents daily; ran errands for her parents and used the family car; and was therefore a resident of her father's household). *See also,* Annotation, *Who is "Resident" or "Member" of Same "Household" or "Family" as Named Insureds, Within Liability Insurance Provision Defining Additional Insureds,* 93 A.L.R.3d 420 (1979).

"In determining whether there is a common household, our courts often consider whether the insured and the relative seeking coverage share a substantially integrated family relationship." *Gibson v. Callaghan,* 158 N.J. 662, 673, 730 A.2d 1278, 1284 (1999). According to *Black's Law Dictionary* 740 (6th Ed.1990), a household is a "family living together," and the "[t]erm 'household' is generally synonymous with 'family' for insurance purposes, and *includes* those who dwell together as a family under the same roof" (emphasis added).

Dwelling together under the same roof is only one of the considerations in the analysis

husband's insured household during trial separation; husband continued to pay community debts, including living expenses of wife; most of husband's clothing was still in the marital home; and husband continued to receive mail there); *Aetna Cas. & Sur. Co. v. Miller,* 276 F.Supp. 341 (D.Kan.1967) (wife was a resident of her hus-

band's insured household, despite the fact that she was living apart from her husband and a divorce action was pending between the parties; the wife left personal property with the husband, the couple frequently visited, and the policy was a "family automobile policy"); *Mazzilli v. Acc. & Cas. Ins. Co.,* 35 N.J. 1, 170 A.2d 800 (1961).

for determining whether a person is a resident of a household or family, and courts have repeatedly held that a person may prove that he or she is a member of a household or family even though the person does not live under the same roof as the other members. Most courts begin by examining the intent of the parties:

> [T]he controlling factor is the intent, as evinced primarily by the acts, of the person whose residence is questioned. If an absence from a residence is intended to be temporary, it does not constitute an abandonment or forfeiture of the residence.

> Because a determination of residency depends on intent, it typically should not be made on a motion for summary judgment.

*Farmers Automobile Ins. Assoc. v. Williams,* 321 Ill.App.3d 310, 254 Ill.Dec. 231, 234, 746 N.E.2d 1279, 1282 (2001) (citations omitted).

■ It is possible to show that a person is a member of a household when the person does not live under the same roof as the other members of the household. Courts have endeavored to list the many factors that can be considered to determine whether someone shares a relationship with the insured so as to be considered a "resident" of the insured "household." These factors "collectively point to the common inquiry of whether the insured and others in the household intend for the insured's house to be their place of permanent residency and reasonably act on that intent." *State Farm Mutual Auto. Ins. Co. v. McCormick,* 171 Or.App. 657, 17 P.3d 1083 (Ct.App.2000).

The courts of Wisconsin have indicated that the "controlling test of whether persons are members of a household at a particular time is not solely whether they are then residing together under one roof." *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis.2d 27, 36, 197 N.W.2d 783, 788 (1972). In *Pamperin,* the Wisconsin court indicated that an examination should be made of whether the relative and the named insured are:

> (1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship "... in contracting about such matters as insurance or in their conduct in reliance thereon."

55 Wis.2d at 37, 197 N.W.2d at 788. *In accord, A.G. v. Travelers Ins. Co.,* 112 Wis.2d 18, 21, 331 N.W.2d 643, 645 (Ct.App.1983). Other courts have noted that this is not a "mandatory threefold test" and "[n]o single factor is the sole or controlling test of whether a person is a resident of a household." *Londre v. Continental Western Ins. Co.,* 117 Wis.2d 54, 58, 343 N.W.2d 128, 130 (1983).

The courts of Minnesota have followed Wisconsin's approach, and considered other factors such as: the age of the person; whether the person establishes a separate residence; the self-sufficiency of the person; the frequency and duration of the person's stay in the family home; and the person's expressed intent to return to the family home. *Mutual Service Cas. Ins. Co. v. Olson,* 402 N.W.2d 621 (Minn.App.1987); *Wood v. Mutual Service Cas. Ins. Co.,* 415 N.W.2d 748 (Minn.App.1987). Courts in the State of Washington have suggested consideration of the expressed intent of the person in question, the formality or informality of the relationship between that person and the members of the household at issue, the relative propinquity of the dwelling units, and existence of another place of lodging for the person in question. *General Motors Acceptance Corp. v. Grange Ins. Ass'n,* 38 Wash. App. 6, 684 P.2d 744 (1984); *Pierce v. Aetna Cas. and Sur. Co.,* 29 Wash.App. 32, 627 P.2d 152 (1981).

A Colorado court has found the following elements to be important: the subjective or declared intent of the person; the formality or informality of the relationship between the person and the members of the household; the existence of another place of lodging by the alleged resident; and the relative permanence or transient nature of the individual's residence in the insured's home. *Iowa Nat'l Mutual Ins. v. Boatright,* 33 Colo.App. 124, 516 P.2d 439 (1973). Arizona courts consider similar factors, such as the living arrangements of the person prior to the accident;

the person's absence or presence from the insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; and the individual's subjective or declared intent with respect to a place of residence. *State Farm Mut. Auto. Ins. Co. v. Johnson,* 151 Ariz. 591, 729 P.2d 945 (Ariz.App.1986); *Mid–Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 641 P.2d 1272 (1982).

 It is clear from these cases that a determination of whether a person is a resident of a particular household is an elastic concept entirely dependent upon the context in which the question arises. As used in the Farmers Mutual policy at issue in this case, the phrase " resident of your household" is not defined. The parties—and many other courts—are able to give the policy language differing but equally reasonable constructions. Accordingly, we find that the policy language is ambiguous and must be construed.

 We therefore hold that, in a homeowners' insurance policy that does not otherwise define the phrase "resident of your household," the phrase means a person who dwells—though not necessarily under a common roof—with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together. The factors to be considered in determining whether that standard has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the other members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person. To the extent that *Spangler v. Armstrong,* 201 W.Va. 643, 499 S.E.2d 865 (1997) (*per curiam*) suggests that only a person who lives under the same roof as an insured can be a member of the insured's household, and that a person who lives under a separate roof cannot, it is hereby modified.

 Furthermore, because a determination of residency depends on the intent of the parties, it is typically a question of fact that cannot be determined through a motion for summary judgment. *See Farmers Automobile Ins. Assoc. v. Williams,* 254 Ill.Dec. at 234, 746 N.E.2d at 1282.

 The sparse appellate record in the instant case indicates that Darrell Lee was, at the time of the accident, thirty-eight years old and lived alone in a mobile home on his father's property. The record suggests that Darrell Lee paid no rent or security deposit to his father for use of the mobile home, and signed no lease. Darrell Lee had no regular job apart from his duties on the farm, and the longest time he was continuously employed elsewhere was approximately one year. An inference can be drawn from the record that Locie paid for most, if not all, of Darrell Lee's living expenses including his utilities and food.

Based upon this record, we believe that inferences favorable to Mr. Tucker can be drawn from the underlying facts, such that a jury could reasonably conclude that Darrell Lee was a "resident" of Locie's "household." We therefore conclude that the circuit court erred in granting summary judgment to Farmers' Mutual.[7]

## IV.

### *Conclusion*

Accordingly, the circuit court's August 27, 2001 order granting summary judgment is reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

---

7. The appellant also contends that Darrell Lee was, at the time of the accident, acting as Locie's employee. The appellant argues that because the circuit court wholly failed to address this issue in its summary judgment ruling, and argues that the case should be remanded for reconsideration of this contention. *See* Syllabus Point 3, *Fayette Co. National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997) (holding that a circuit court order granting summary judgment must identify the factual and legal support for the circuit court's ultimate conclusions). As we resolve this case on another issue, we decline to address the appellant's contention.

Chief Justice DAVIS dissents and files a dissenting opinion.

Justice MAYNARD dissents and files a dissenting opinion.

Justice ALBRIGHT concurs and files a concurring opinion.

DAVIS, C.J., dissenting:

In this proceeding the trial court granted summary judgment against Hubert Tucker. The trial court found no material issue of fact in dispute as to whether a homeowner's policy issued by Farmers Mutual Insurance Company covered Darrell Taylor, the adult son of its insured, Locie Taylor. The majority has determined that material issues of fact exist in this case. Therefore, the majority reversed the trial court's ruling. For the reasons set out below, I dissent.

## A. *Locie Taylor Never Claimed That His Son Was a Member of His Household*

The initial problem I have with the majority opinion is that the opinion blindly launches into the meaning of "household," when a more fundamental and dispositive hurdle had to be addressed and overcome by Mr. Tucker. That issue involved the evidence presented to show that Locie or Darrell believed that Darrell was a member of Locie's household. In every case, cited in the majority, except one, a party to the litigation claimed to be a member of a household in order to obtain coverage under a policy. *See Johnson v. State Farm Mut. Auto. Ins. Co.*, 252 F.2d 158 (8th Cir.1958) (insured's daughter sought coverage); *Atlanta Cas. Co. v. Powell*, 83 F.Supp.2d 749 (N.D.Miss.1999) (son sought coverage under father's policy); *Aetna Cas. & Sur. Co. v. Shambaugh*, 747 F.Supp. 1203 (N.D.W.Va.1990) (insured sought coverage for son); *Aetna Cas. & Sur. Co. v. Miller*, 276 F.Supp. 341 (D.Kan.1967) (estranged wife sought coverage under husband's policy); *Crossett v. St. Louis Fire & Marine Ins. Co.*, 289 Ala. 598, 269 So.2d 869 (1972) (son sought coverage under father's policy); *Simmons v. Insurance Co. of N. Am.*, 17 P.3d 56 (Alaska 2001) (daughter sought coverage of father's alleged policy); *Mid–Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 641 P.2d 1272 (1982) (daughter of insured sought cov-

erage); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 151 Ariz. 591, 729 P.2d 945 (Ct.App. 1986) (spouse of deceased sought coverage under decedent's policy); *Reserve Ins. Co. v. Apps*, 149 Cal.Rptr. 223, 85 Cal.App.3d 228 (1978) (estranged wife sought coverage under husband's policy); *State Farm Mut. Auto. Ins. Co. v. Elkins*, 125 Cal.Rptr. 139, 52 Cal.App.3d 534 (1975) (daughter sought coverage under parents' policy); *Cal–Farm Ins. Co. v. Boisseranc*, 151 Cal.App.2d 775, 312 P.2d 401 (1957) (insured sought coverage for son); *Iowa Nat. Mut. Ins. Co. v. Boatright*, 33 Colo.App. 124, 516 P.2d 439 (1973) (estate of deceased sought coverage under daughter's policy); *Rathbun v. Aetna Cas. & Sur. Co.*, 144 Conn. 165, 128 A.2d 327 (1956) (sister of deceased was member of deceased household); *Alava By and Through Alava v. Allstate Ins. Co.*, 497 So.2d 1286 (Fla.Dist.Ct. App.1986) (son sought coverage under father's policy); *Row v. United Servs. Auto. Ass'n*, 474 So.2d 348 (Fla.Dist.Ct.App.1985) (father sought coverage for deceased son); *Farmers Auto. Ins. Ass'n v. Williams*, 321 Ill.App.3d 310, 254 Ill.Dec. 231, 746 N.E.2d 1279 (2001) (insured's son sought coverage); *Wood v. Mutual Serv. Cas. Ins. Co.*, 415 N.W.2d 748 (Minn.Ct.App.1988); *Mutual Serv. Cas. Ins. Co. v. Olson*, 402 N.W.2d 621 (Minn.Ct.App.1987) (son sought coverage under mother's policy); *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo.1979) (insured sought coverage for deceased daughter); *Amco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993) (insureds sought coverage for niece); *Gibson v. Callaghan*, 158 N.J. 662, 730 A.2d 1278 (1999) (in-law of insured sought coverage); *Mazzilli v. Accident & Cas. Ins. Co.*, 35 N.J. 1, 170 A.2d 800 (1961) (estranged wife sought coverage under husband's policy); *Nationwide Mut. Ins. Co. v. Allison*, 51 N.C.App. 654, 277 S.E.2d 473 (1981) (estranged wife sought coverage under husband's policy); *State Farm Mut. Auto. Ins. Co. v. McCormick*, 171 Or.App. 657, 17 P.3d 1083 (2000) (mother sought to show daughter was not member of household); *General Motors Acceptance Corp. v. Grange Ins. Ass'n*, 38 Wash.App. 6, 684 P.2d 744 (1984) (son sought coverage under father's policy); *Pierce v. Aetna Cas. & Sur. Co.*, 29

Wash.App. 32, 627 P.2d 152 (1981) (son sought coverage under father's policy); *A.G. by Waite v. Travelers Ins. Co.*, 112 Wis.2d 18, 331 N.W.2d 643 (Ct.App.1983) (foster care child sought coverage under foster care mother's policy); *Londre by Long v. Continental W. Ins. Co.*, 117 Wis.2d 54, 343 N.W.2d 128 (Ct.App.1983) (son sought coverage under father's policy).[1]

Here, there was no evidence presented by Mr. Tucker that Locie believed or considered Darrell to be a member of his household. Additionally, there was no evidence that Darrell believed or considered himself a member of Locie's household. In fact, the evidence indicated that neither Locie nor Darrell considered Darrell as a member of Locie's household. Thus, there was no need to examine the wording of the insurance policy. Under the majority's decision, Mr. Tucker merely had to assert that Darrell was a resident in Locie's household to trigger an analysis of the policy language. This is wrong. A third party cannot be allowed to invade a homeowner's contract with an insurance company solely upon a bare assertion that someone resides in the homeowner's home. Bare assertions are the fruit of summary judgment and should be dismissed as a matter of law.

## B. Mr. Tucker Did Not Satisfy the Test Created by the Majority Opinion

Assuming arguendo that Mr. Tucker submitted sufficient evidence to require the trial court to examine the language of the policy, Mr. Tucker nevertheless failed to satisfy the test created by the majority in order to withstand summary judgment.

Under the majority opinion, for Mr. Tucker to establish that Darrell was a resident of Locie's household, Mr. Tucker had to present evidence on the following: (1) the intent of the parties, (2) the formality of the relationship between the person in question and the other members of the named insured's household, (3) the permanence or transient nature of that person's residence therein, (4)

the absence or existence of another place of lodging for that person, and (5) the age and self-sufficiency of that person. Mr. Tucker's evidence fails under all five criteria.

*1. The intent of the parties.* This factor in the majority's test is particularly confusing, primarily due to the lack of any indication of what is meant by the term "formality." Assuming, for the sake of argument, that this factor directs that consideration be given to the relationship between the "person in question" and the insured, then Mr. Tucker's case still fails to survive summary judgment as he did not present any evidence describing the nature of the relationship between Darrell and Locie.

*2. The formality of the relationship between the person in question and the other members of the named insured's household.* This next requirement simply has no application in the context of the instant case. Only two people have been described as relevant in the so-called household in this case: Darrell and Locie. There is no evidence of anyone else purporting to be a member of the alleged household.

*3. The permanence or transient nature of that person's residence therein.* Under this element of the majority's test, there must have been a showing that a person was actually residing in the home of the insured for some period of time. Here, all evidence established that Darrell did not reside in Locie's trailer. Darrell lived in one trailer. Locie lived in a separate trailer.

*4. The absence or existence of another place of lodging for that person.* As previously indicated, all evidence proved that Darrell lived alone in his own trailer.

*5. The age and self-sufficiency of that person.* Darrell was thirty-eight years old. He lived alone and independently.

Based upon the evidence outlined above, it is clear that summary judgment was appropriate in this case.

---

1. The only case cited by the majority where a third party sought to show a tortfeasor was a resident in another's home was the case of *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972). In *Pamperin*, the court reversed a jury's finding that the tortfeasor resided in the home of her uncle.

## C. Every Insurance Contract Entered into in the State of West Virginia Is Subject to Ambiguity under Syllabus Point 2 of the Majority Opinion

Prior to the decision in the instant case, the law in West Virginia has traditionally held that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962). *See also* Syl. pt. 2, *Orteza v. Monongalia County Gen. Hosp.,* 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed."); Syl. pt. 4, *Williams v. South Penn Oil Co.,* 52 W.Va. 181, 43 S.E. 214 (1903) ("It is the safest and best mode of construction to give words free from ambiguity their plain and ordinary meaning."). In syllabus point two of the majority opinion, our law of contract interpretation has been totally emasculated and replaced with a new and dangerous rule.

Syllabus point two of the majority opinion states that "[w]hen the words of an insurance policy are, without violence, susceptible of two or more interpretations, that which will sustain the claim and cover the loss must be adopted." This proposition is revolutionary in the area of contract interpretation. In every treatise, law review publication, and every decision ever rendered by an American court, the rule of law has been that an unambiguous contract cannot be "contorted" to make it ambiguous. The majority in this case has deviated from all Anglo–American jurisprudence to permit unambiguous language in an "insurance policy" to become ambiguous, so long as the contortion of the unambiguous words is "without violence."

I am simply at a loss in expressing my dismay over the majority's decision to make every unambiguous insurance policy in West Virginia subject to challenge by policyholders.[2] Under the majority opinion no insurance company will ever prevail, even when the clear and unambiguous terms of a policy

support their position. This is true because syllabus point two. of the majority opinion permits a plaintiff's attorney to contort unambiguous words "without violence" in order to make them ambiguous. When this is done, the majority has made crystal clear that the interpretation "which will sustain the claim and cover the loss *must* be adopted." (Emphasis added).

In view of the foregoing, I dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.

MAYNARD, Justice, dissenting.

I believe that the term "household" is clear and means a family living together under the same roof. Up until now, a majority of this Court believed the same thing.

In *Spangler v. Armstrong,* 201 W.Va. 643, 646, 499 S.E.2d 865, 868 (1997) (per curiam), this Court stated that "liability policies providing coverage for members of an insured's 'household' generally include persons who live under the same roof, but not those who live in separate houses." In support of this proposition, we cited *Gredig v. Tennessee Farmers Mut. Ins. Co.,* 891 S.W.2d 909, 913 (Tenn.Ct.App.1994) ("The great weight of authority seems to be to the effect that a household means those living together under one roof, under one head, and under the common control of one person.") (*Quoting Boyd v. Peoples Protective Life Ins. Co.,* 208 Tenn. 280, 345 S.W.2d 869, 872 (1961)); *Howard v. Hartford Ins. Co.,* 127 N.H. 727, 507 A.2d 230, 232 (1986) ("We hold that someone living in a separate dwelling, though on the insured premises, is not a member of the named insured's household."); *Hernandez v. Comco Ins. Co.,* 357 So.2d 1368, 1371 (La.Ct. App.1978) ("The pattern which emerges from the myriad of decisions considering the term 'household' seems to be an emphasis on dwelling as a family under one head."); 43 *Am.Jur.2d Insurance* § 704 (1982) ("liability policies providing coverage for any member of the insured's 'household' ... have been held not to include persons living in separate homes from the insured." (Footnote omit-

---

**2.** Obviously, this new principle of law will not be confined to insurance policies. Lawyers will use this unforgivable principle of law to attack unambiguous language in all contracts.

ted)); and *Webster's New Collegiate Dictionary* 550 (1981) (defining "household" as "those who dwell under the same roof and compose a family."). Based on all of this authority, we concluded that "the word 'household' in [the insurance policy at issue] is clear and unambiguous." *Spangler,* 201 W.Va. at 646, 499 S.E.2d at 868 (footnote omitted).

Our analysis and conclusion in *Spangler* still hold true. There is absolutely no legitimate reason for the majority's complete about face. I simply fail to understand how a term can go from being clear and unambiguous to being so "elastic" that it is practically devoid of meaning within the space of five years.

In sum, the majority opinion results in a substantial change in our law with regard to who is a "resident of your household" for insurance purposes despite there being no factual or legal basis for such a change. Also, it suggests that as long as a person lives somewhere on the insured's property, he or she is covered by the insured's homeowner's policy. In addition, it unnecessarily interjects uncertainty into what was previously a settled area of law. Finally, by foreclosing summary judgment and leaving the question of residency of a household up to a jury in each case, it opens the possibility of wildly inconsistent verdicts in cases with the same or similar set of facts.

For the reasons stated above, I would have applied the settled law in *Spangler* to the facts of this case and affirmed summary judgment on behalf of Farmers Mutual. Accordingly, I dissent. I am authorized to state that Chief Justice DAVIS joins me in this dissent.

ALBRIGHT, Justice, concurring.

While I concur in the decision of the majority, I write separately to clarify the factual record supporting the majority opinion, and to suggest how the legal points discussed in the majority opinion might be applied by the circuit court on remand.

I agree with the majority opinion's conclusion that questions of fact exist regarding whether Darrell Lee Taylor was a member of his father Locie Taylor's household, and thereby whether plaintiff Hubert Junior Tucker is entitled to recover against Locie Taylor's homeowner's liability policy issued by Farmers Mutual Insurance Company.

The record from the trial court and the briefs of the parties suggest that the tortfeasor in this case, Darrell Lee Taylor, is a 38–year–old man who—except for a short, unsuccessful marriage—has lived continuously on the farm owned by his father, Locie Taylor. Darrell Lee Taylor lives in a mobile home that is owned by his father, and he pays no rent. The record suggests that Darrell Lee Taylor has no job other than tasks he performs around the farm, and has no source of income except for what his father gives him. Locie Taylor admitted that he gives his son money without receiving anything from Darrell Lee Taylor in exchange. Darrell Lee Taylor, in response to interrogatories, stated that he owned "nothing."

Locie Taylor testified below that his arrangement with Darrell Lee Taylor was not unique. Several of his children have lived on his farm at various times, in trailers that he owned, and he has never charged them rent. He would also give them money when they needed it. The children would occasionally perform work around the farm; they appear to have been able to freely eat food raised or grown on the farm.

Before the circuit court Darrell Lee Taylor contended that he was not a member of his father's "household" for purposes of the insurance policy purchased by his father. Darrell Lee Taylor also signed an agreement with the insurance company stating that in return for the insurance company paying for his legal defense, Darrell Lee Taylor would waive any right to coverage under the insurance policy.

My dissenting colleagues argue that both Locie Taylor's and Darrell Lee Taylor's assertion that Darrell Lee Taylor was not a member of Locie Taylor's household is a "fundamental and dispositive hurdle." However, the majority opinion correctly indicates that the Taylors' characterization of their living arrangements is only one factor to consider. Moreover, the facts of the instant case demonstrate why the Taylors' charac-

terization is not controlling. A jury could reasonably infer from the record that Darrell Lee Taylor has no income, no assets, and is otherwise judgment-proof, and that he has therefore accepted sole responsibility for Mr. Tucker's injuries because Mr. Tucker would never be able to collect any judgment for damages from Darrell Lee Taylor. A jury could reasonably infer that Darrell Lee Taylor, by denying the existence of a household and accepting full responsibility, is attempting to protect his father—who owns a farm and several mobile homes—from any measure of liability. And because Mr. Tucker's injuries were extensive, and because there is only $25,000.00 in liability coverage available under the disputed insurance policy, Locie Taylor appears to have a significant motive for distancing himself and his assets from the careless actions of his son.

The characterization offered by Darrell Lee Taylor and Locie Taylor is that Darrell Lee Taylor is independent, living "on his own." The record, however, can be read to indicate that Darrell Lee Taylor in fact relies entirely upon his father for his day-to-day living. Locie Taylor provides a roof over his son's head on Locie Taylor's property, provides him with income, and provides him with food on the table. Thus, a jury could infer from Locie Taylor's and Darrell Lee Taylor's actions before Mr. Tucker was injured that Darrell Lee Taylor intended to be and was a resident of Locie Taylor's household, even if the two now say otherwise. Of course, the jury—in possession of all of the facts—may conclude otherwise. The principal point of the majority opinion is that the issue is one of fact, not one of law.

The majority opinion correctly indicates that a court should consider the "formality of the relationship between the person in question and the other members of the named insured's household." The record reveals no aspects of a stilted, formal relationship between Darrell Lee Taylor and Locie Taylor. Instead, Darrell Lee Taylor appears to have been free to come and go as he pleased, was allowed to go anywhere on the family property that he liked, and received money from his father when he expressed a need for money. Nothing in the record indicates that any place or activity on the farm was off-limits to Darrell Lee Taylor. Instead of a formal, landlord-tenant type relationship, the record suggests that Darrell Lee Taylor acted like a son, living in and on the family household and homestead.

Another factor that the majority opinion indicates a court should consider is "the permanence or transient nature of that person's residence therein." In other words, a court should consider whether Darrell Lee Taylor was "transient" and stayed at his family's farm for only short periods, or whether he seemed to maintain a permanent presence, so that he would call it a "residence." The record is clear that, except for a brief marriage, Darrell Lee Taylor lived permanently on his family's property.

A third factor to consider is the "absence or existence of another place of lodging for that person." Darrell Lee Taylor had only the mobile home and farm as his place of lodging. He did not own a residence elsewhere, nor did he have another place that he called "home."

Another factor is the "age and self-sufficiency of that person." It may be conceded that Darrell Lee Taylor was a 38–year–old man at the time of Mr. Tucker's injuries. However, the record indicates that Darrell Lee Taylor is an alcoholic and relies entirely upon his father's grace to sustain him. There appears to be little evidence in the record to establish that Darrell Lee Taylor is "self-sufficient," but much evidence from which we could draw the conclusion that Locie Taylor's household is Darrell Lee Taylor's sole source of support.

The circuit court below began its analysis in this case by presuming that the term "household" means "only individuals living together under the same roof," and in doing so relied upon language contained in *Spangler v. Armstrong*, 201 W.Va. 643, 499 S.E.2d 865 (1997) (*per curiam*). Yet the clear majority of jurisdictions hold that individuals do not have to live under the same roof in order to be members of the same household. *See* Annotation, "Who is 'Resident' or 'Member' of Same 'Household' or 'Family' as Named Insured, Within Liability Insurance Provision Defining Additional Insureds," 93 A.L.R.3d

420 (1979).[1] The majority opinion examined the use of the word "household" by Farmers' Mutual in its policy, a term which was not defined, and concluded as many other jurisdictions have concluded that whether a particular person is a "resident" or "member" of a particular "household" is ordinarily a question of fact. In the instant case, inferences can be drawn from facts in the record that are favorable to Mr. Tucker, so it was therefore improper for the circuit court to grant summary judgment against him.

One other point in the circuit court's summary judgment order should be raised. The circuit court concluded that the term "household" was clear and unambiguous in the Farmers Mutual policy, and then went on to apply our law which specifies that "[w]here the provisions of an insurance policy are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

However, many jurisdictions have concluded that the term "household" is a "chameleon like word" that takes its color of meaning from the context in which it is found. *See, Amco Ins. Co. v. Norton*, 243 Neb. 444, 447, 500 N.W.2d 542, 545 (1993); *Cobb v. State Security Ins. Co.*, 576 S.W.2d 726, 738 (Mo. 1979). The meaning of the word "may vary according to the circumstances." *Cal–Farm Ins. Co. v. Boisseranc*, 151 Cal.App.2d 775, 781, 312 P.2d 401, 404 (1957). In other words, many other courts looking at the same insurance policy language found in the Farmers Mutual policy have concluded that the term "household" is ambiguous.

One rule of insurance policy construction that is well settled law in West Virginia states that an insurance policy is ambiguous if it can reasonably be understood in two different ways or if it is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning. Syllabus Point 1, *Prete v. Merchants Property Ins. Co. of Indiana*, 159 W.Va. 508, 223 S.E.2d 441 (1976). Another rule of construction is that "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

The majority opinion, looking to the courts of Connecticut, found the above two rules of construction combined into one in *Raffel v. Travelers Indemnity Co.*, 141 Conn. 389, 392, 106 A.2d 716, 718 (1954), where the court stated that, "When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." My dissenting colleagues

---

1. The ALR article summarizes the law in this area in this fashion:

 A review of the cases construing or applying the particular policy terms that are the subject of the present annotation reveals a wide variety of factual considerations upon which the courts have focused in their determinations of whether a particular person was a "resident" or "member" of the same "household" or "family" as the named insured at a particular time. Those factual considerations not only relate to the respective individual's physical presence in, or absence from, the named insured's home during the period that included the date of a particular occurrence, but also relate to such matters as the relationship (if any) of the individual to the named insured, the circumstances of such person's presence in or absence from the named insured's home, the individual's living arrangements during earlier time periods, and the individual's intention at various times with regard to his place of residence. Such factual considerations have become particularly significant in view of the express recognition by courts, in numerous cases appearing throughout the annotation, that some or all of the respective policy terms are ambiguous or devoid of any fixed meaning.

 A significant portion of the cases focusing upon one or more of the policy terms under consideration have involved a child of the named insured. Where such child was staying with the named insured during a period that included the date of the accident or other occurrence giving rise to the controversy concerning the child's status, courts have held, on the basis of a variety of circumstances, that the child qualified as a "resident" or "member" of the named insured's "household." Such results have been reached despite circumstances that included the child's separate living arrangements during a prior period, and the child's status as an individual over the age of majority.

 93 A.L.R.3d at 424–25, § 2.

**32**

suggest that the majority opinion's adoption of this "unforgivable principle of law" will "make every unambiguous insurance policy in West Virginia subject to challenge by policyholders," and will be used "to attack unambiguous language in all contracts." However, this rule has operated in Connecticut for nearly 50 years, and it does not appear to have had such a wide-ranging, deleterious effect.[2] The majority opinion merely holds that if a term in an insurance policy can *reasonably* be understood in two different ways—without violence or undue contortion—then the term will be construed against the insurance company and in favor of the person seeking coverage.

Our use of the Connecticut articulation of two long-established principles of West Virginia law does not raise the specter of widespread attack on unambiguous language forecast by the dissenters. Such a reading of the majority opinion does a profound disservice to the long-established law of this State.

The majority opinion rightfully acknowledges that, as previously mentioned, a determination of whether someone is a "resident" of a "household" depends on the intent and actions of the parties and is typically a question of fact for the jury, usually not susceptible to determination through a motion for summary judgment. In sum, the circuit court erred, and the majority opinion correctly concluded that the term "household," as used in the Farmers Mutual policy, is ambiguous, and its meaning is dependant upon the facts to which the term is being applied.

I therefore respectfully concur with the decision to reverse the circuit court's summary judgment.

---

**2.** *See, e.g., Costabile v. Metropolitan Property and Cas. Ins. Co.*, 193 F.Supp.2d 465, 476 (D.Conn. 2002); *Hertz Corp. v. Federal Ins. Co.*, 245 Conn. 374, 382, 713 A.2d 820, 824 (1998); *Heyman Associates No. 1 v. Insurance Co. of State of Pa.*, 231 Conn. 756, 770, 653 A.2d 122, 130 (1995).