JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Motorists Mutual Insurance Company ("Motorists"), appeals the final judgment of the Cuyahoga County Court of Common Pleas that found in favor of appellee, LaCyra Henderson, on liability insurance coverage issues.[1] For the reasons stated below, we affirm.
 {¶ 2} The following facts give rise to this appeal. On May 17, 2001, Dayvon Henderson, a young child, drowned in a swimming pool cover at the home of his father, Emerson Holly, and paternal grandparents, Joann and DeLord Holly. Motorists had issued a homeowner's policy to Joann and DeLord Holly.
 {¶ 3} Motorists brought this declaratory judgment action against Dayvon's mother, LaCyra Henderson, individually and as administratrix of the Estate of Dayvon Henderson; Dayvon's father, Emerson Holly; and Dayvon's grandparents, Joann Holly and DeLord Holly. Essentially, Motorists was seeking a declaration that it was not obligated to defend, indemnify, or pay any claim or judgment arising out of the incident. Motorists alleged that Dayvon was an "insured" as defined in the policy to whom a bodily injury exclusion applied. The complaint included a jury trial demand.
 {¶ 4} LaCyra Henderson filed a separate answer counterclaim, cross-claims and third-party complaint. The counterclaim against Motorists sought a declaration that liability insurance coverage was available for the claim under the applicable policy. LaCyra alleged in the counterclaim that at the time of Dayvon's death, he "resided" solely with his mother and maternal grandfather and was a visitor at his paternal grandparents' home. LaCyra further alleged because Dayvon did not qualify as a "resident" of the Holly household under the insurance policy, he did not qualify as an insured to whom the policy exclusion applied. The cross-claim was a negligence and wrongful death claim against the Holly defendants. The third-party complaint, as amended, was against Leslie's Swimming Pool Supplies, the alleged distributor of the pool cover at issue.
 {¶ 5} The trial court denied motions for summary judgment that were filed by LaCyra Henderson and Motorists, finding a genuine issue of fact existed as to whether Dayvon was a resident of the Holly household and therefore excluded from coverage under Motorists' policy. The matter proceeded to a jury trial on the issue. The jury found that Dayvon was solely a resident of his mother's home. The trial court proceeded to enter judgment in favor of LaCyra Henderson, ordered Motorists to provide insurance coverage consistent with its policy, and held that Motorists was obligated to defend and indemnify the Holly defendants.
 {¶ 6} The trial court granted a motion for summary judgment filed by third-party defendant, Leslie's Swimming Pool Supplies. The remaining parties entered a stipulated entry of final judgment with respect to all remaining claims.
 {¶ 7} Motorists has appealed, raising six assignments of error for our review. The first assignment of error provides:
 {¶ 8} "I: The trial court erred as a matter of law in its interpretation of the liability insurance exclusion at issue."
 {¶ 9} This assignment of error involves the issue of whether the bodily injury exclusion in the insurance policy requires that one be a "resident" for the exclusion to apply. We find that it does.
 {¶ 10} The policy defines an "insured" as: "`Insured' means you and residents of your household who are:
"a. Your relatives; or
"b. Other persons under the age of 21 and in the care of any person named above.
* * *."
 {¶ 11} The parties do not dispute that Dayvon met "a" and "b" of the above definition. However, in order to qualify as an insured, Dayvon was also required to be a resident of the Holly household.
 {¶ 12} The bodily injury exclusion provides:
"Coverage E — Personal Liability, does not apply to: * * * f. `Bodily injury' to you or an `insured' within the meaning of part a. or b. of `insured' as defined."
 {¶ 13} Motorists argues that the trial court erred in interpreting the bodily injury exclusion to include the full definition of "insured," which includes "residents." Motorists claims that the exclusion refers only to "part a. or b." of the "insured as defined" and, therefore, should not be read to require bodily injury to a "resident." Such an interpretation ignores the clear and unambiguous language of the policy.
 {¶ 14} The exclusion as written applies only where there has been bodily injury to "you or an `insured.'" In order for Dayvon to qualify as an "insured," he must have been a "resident." Moreover, an "`insured' as defined" includes a residency requirement. The reference to "part a. or b." does not alter the definition of an insured, which includes the resident requirement, but merely restricts the exclusion to an insured within the meaning of these parts as opposed to other subparts of the definition that were not referenced and/or applicable.
 {¶ 15} It is well established that when the language in an insurance policy is clear and unambiguous, we must enforce the contract as written and give the words their plain and ordinary meaning. Hybud Equip. Corp.v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. The bodily injury exclusion is clear. Under the policy, in order for Dayvon to have been an insured to whom the exclusion could apply, he must have been a resident of the Holly household.
 {¶ 16} We find the trial court did not err in reaching this conclusion. Motorists' first assignment of error is overruled.
 {¶ 17} The second assignment of error provides:
 {¶ 18} "II: The trial court erred in not finding as a matter of law that the liability insurance exclusion was applicable to the underlying claim."
 {¶ 19} Motorists argues that only the trial court could decide the coverage issue as a matter of law. Motorists therefore claims that whether Dayvon was a "resident" should have been determined by the trial court and that the court erred in submitting the issue to the jury.
 {¶ 20} While the construction of an insurance contract is, in the first instance, a matter of law for the court to determine, juries are allowed to decide factual matters to determine whether a policy provides coverage. Stiriz v. Motorists Mutual Ins. Co., Fulton App. No. F-01-010, 2002-Ohio-1521, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241 and Leber v. Smith (1994), 70 Ohio St.3d 548. Further, a trial court has the discretion in a declaratory judgment action to order factual issues to be determined by a jury. Nationwide Ins. Co. v.Gibbons (Apr. 26, 1994), Franklin App. No. 93APE09-1264.
 {¶ 21} R.C. 2721.10 provides that an issue in a declaratory judgment action may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions. R.C. 2311.04, which covers the trial of issues in civil actions, provides that issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried to a jury unless waived, and that all other issues of fact shall be tried by the court, "subject to its power to order any issue to be tried by a jury, or referred." (Emphasis added.)
 {¶ 22} Numerous courts have recognized that the issue of whether a person is a "resident" for insurance coverage purposes is a question of fact to be determined by the fact finder. See State Farm Mut. Auto. Ins.Co. v. McCormick (2000), 171 Ore. App. 657, 17 P.3d 1083; North StarMut. Ins. Co. v. Colonial Penn Ins. Co. (Jan. 19, 1999), Minn. App. No. C7-98-953; Michigan Basic Prop. Ins. Ass'n v. Moore (Aug. 9, 1996), Mich. App. No. 182095; Gordinier v. Aetna Casualty Sur. Co. (1987),154 Ariz. 266, 742 P.2d 277; see, also, Entenman v. Auto-Owners Ins. Co.
(2000), 136 Ohio App.3d 541, 549; Wood v. McQueen (Sept. 21, 1995), Cuyahoga App. No. 68472. We agree with these decisions and find that the trial court did not err in submitting the issue to a jury. A genuine issue of material fact existed as to whether Dayvon was a resident of the Holly household. We also find interesting the fact that Motorists filed a jury demand in this action. Motorists' second assignment of error is overruled.
 {¶ 23} The third assignment of error provides:
 {¶ 24} "III. The jury verdict was against the manifest weight of the evidence and contrary to the evidence."
 {¶ 25} In civil cases, judgments that are supported by some competent and credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. State v. Schiebel (1990), 55 Ohio St.3d 71, 74. Moreover, evaluating evidence and assessing credibility are primarily for the trier of fact. Crull v. Maple Park Body Shop (1987),36 Ohio App.3d 153.
 {¶ 26} Motorists argues that the evidence in this case established that at the time of the incident at issue, Dayvon was a resident of both his mother's and his father's residences. Motorists refers to case law pertaining to dual residency.
 {¶ 27} The policy before this court does not define the phrase "resident of your household." It has been recognized that a "resident of your household" refers to "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes the temporary or transient visitor."Farmers Ins. of Columbus v. Taylor (1987), 39 Ohio App.3d 68. Under such a policy definition, dual residency is not precluded. Id. We have recognized several factors may be examined when there is a question concerning a person's status as a "resident" in the insured's household, including the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is "legally obligated" to the person. McQueen, supra.
 {¶ 28} Motorists points to statements made by Emerson Holly, Dayvon's father, that the Hollys had the boy most of the time, that Dayvon had his own room in their home, and that he felt as though his son lived with him. Joann Holly stated that they would keep him for two or three days at a time, sometimes longer. Joann stated that in December 2000, LaCyra had been "put out in the street" by her mother and the Hollys would watch Dayvon five days at a time. LaCyra also made a statement that at the time of the incident, Dayvon was at the Hollys' home from Tuesday through Friday so they could watch him while she went to school. An investigating detective also testified that it was his understanding, after speaking to Joann Holly, that Dayvon spent a great deal of time at the Hollys' home. However, there was testimony from DeLord Holly that Dayvon was "visiting" and they would take care of him whenever LaCyra needed them to and they were available.
 {¶ 29} There was also testimony from Joann and DeLord Holly indicating that Dayvon lived with LaCyra and was not a resident of their home. DeLord stated that at no point in time did he consider Dayvon as living with him and that Dayvon spent the night no more than 25 percent of the time. DeLord further stated that Dayvon would sleep in the "guest room" in their home, which was not specifically for Dayvon. There was also testimony that Dayvon would visit the Hollys' home on an as-needed or as-wanted basis, sometimes for three or four nights. However, these visits were sporadic and weeks could go by before the Hollys would watch Dayvon. Additionally, there was testimony that the Hollys did not have legal custody of Dayvon, did not receive any mail for Dayvon, did not claim Dayvon on income taxes, and did not have Dayvon listed as a named insured under their insurance policies.
 {¶ 30} Upon our review of the record, we find that the judgment was supported by some competent and credible evidence. This case involves a teenage mother, who was a student attending classes and had been thrown out of her mother's home. There was evidence that LaCyra would have the Hollys watch Dayvon on an as-needed basis. While there was some conflicting evidence, the jurors evaluated the evidence, assessed the credibility of the witnesses, and determined that Dayvon was solely a resident of LaCyra's home and not a resident of the Holly household. We do not find the judgment to be against the manifest weight of the evidence. Motorists' third assignment of error is overruled.
 {¶ 31} The fourth assignment of error provides:
 {¶ 32} "IV. The trial court committed prejudicial error by charging the jury, admitting evidence and permitting argument regarding the drowning of the minor child at the Holly residence."
 {¶ 33} Under the Evidence Rules, inclusion of relevant evidence at trial is favored. Davis v. Immediate Medical Servs., 80 Ohio St.3d 10,1997-Ohio-363; Evid.R. 402. Nevertheless, relevant evidence may be excluded in specific circumstances such as when its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 403(A). The Supreme Court of Ohio has stated: "When the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163. An abuse of discretion means a decision that is "unreasonable, arbitrary, or unconscionable." State ex rel.Cranford v. Cleveland, 103 Ohio St.3d 196, 2004-Ohio-4884.
 {¶ 34} In this case, Motorists claims the only issue before the jury was whether Dayvon was a resident of the Holly household and that the trial court erred in admitting evidence that Dayvon had drowned. LaCyra Henderson claims that the circumstances giving rise to the action were relevant.
 {¶ 35} The trial court determined that evidence of Dayvon's drowning was relevant and that the jurors could be informed of the basis of the underlying claim for the issue they were evaluating. Because the drowning was directly related to the action and the policy under review at trial, the trial court could reasonably determine that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. The trial court did not abuse its discretion when it admitted the evidence or when it sustained objections raised by Motorists at trial when the defendants attempted to elicit the information from witnesses. Motorists' fourth assignment of error is overruled.
 {¶ 36} The fifth assignment of error provides:
 {¶ 37} "V. The trial court committed prejudicial error in permitting lay witnesses to give opinions that the boy was not a resident of the paternal grandparents' home."
 {¶ 38} Motorists argues that lay witnesses in this case should not have been permitted to offer opinions as to whether Dayvon was a resident of the Holly household because this permitted them to offer a legal conclusion of residency.
 {¶ 39} Lay witness opinion testimony is permitted when it is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. Opinion testimony is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.
 {¶ 40} Testimony from the Hollys and other witnesses familiar with Dayvon who expressed an opinion on whether they considered Dayvon to be a resident of the Holly household would certainly aid the jury in reaching its conclusion. Moreover, testimony from the Hollys as to their perception of the living arrangement was properly allowed. The record reveals that the trial court gave a complete jury instruction on residency, including the various factors that may be considered. The jury properly considered the evidence and determined the issue based upon the definition provided by the court. Motorists' fifth assignment of error is overruled.
 {¶ 41} The sixth assignment of error provides:
 {¶ 42} "VI. The trial court committed prejudicial error in not removing a juror for cause."
 {¶ 43} Motorists claims the trial court should have permitted the removal of a prospective juror for cause because she had revealed that her four-year-old cousin had died, that it would be difficult for her to separate that, and that she "might" have a problem being fair.
 {¶ 44} A trial court has considerable discretion in determining whether to remove a prospective juror for cause. State v. Cornwell,86 Ohio St.3d 560, 563, 1999-Ohio-125. As such, this court reviews the trial court's decision regarding removal for cause under an abuse of discretion standard. Id. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 45} A review of the transcript reflects that after the prospective juror expressed her concern, the court engaged in further discussion with and questioning of the juror. The court indicated that the issue was just residency and that the drowning was provided as background information to the case. The juror indicated that she would be able to separate the two and that she could follow the law as given. The juror later indicated she felt pretty confident she could set aside the death of her four-year-old cousin, she could listen to the evidence in the case and apply the law as given, and she could be fair and impartial.
 {¶ 46} After reviewing the transcript of voir dire in this case, we find that the trial court did not abuse its discretion by refusing to remove this juror for cause. We also note that the juror was ultimately removed by a peremptory challenge, and therefore, there was no prejudice to the outcome of the case. Accordingly, we overrule Motorists' sixth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Kilbane, J., Concur.
[1] Motorists filed this declaratory judgment action against LaCyra Henderson, Emerson Holly, Joann Holly and DeLord Holly. Pursuant to the Stipulated Journal Entry of Final Judgment, Motorists entered into a settlement agreement with the defendants regarding all remaining claims.